# In the United States Court of Federal Claims

No. 14-135L
(Filed: July 10, 2015)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| JEFFREY MEMMER, GILBERT | \* | |
| EFFINGER, LARRY GOEBEL AND | \* | |
| SUSAN GOEBEL, OWEN HALPENY, | \* | |
| MATTHEW HOSTETTLER, JOSEPH | \* | |
| JENKINS, MICHAEL MARTIN AND | \* | |
| RITA MARTIN, McDONALD FAMILY | \* | Rails-to-Trails; Fifth Amendment Taking; |
| FARMS OF EVANSVILLE, INC., REIBEL | \* | Conveying Easements Under Indiana Law; |
| FARMS, INC., JAMES SCHMIDT AND | \* | Recreational Trails Beyond the Scope of |
| ROBIN SCHMIDT, | \* | Railroad Purposes Easements; No Trail Use |
| | \* | Agreement Executed; Expiration of NITU; |
| Plaintiffs, | \* | Failure to Consummate Abandonment; Offer |
| | \* | of Financial Assistance |
| v. | \* | |
| | \* | |
| THE UNITED STATES, | \* | |
| | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Steven M. Wald, St. Louis, MO, for plaintiffs.

Tyler L. Burgess, United States Department of Justice, Washington, DC, for defendant.

### OPINION AND ORDER

**SWEENEY**, Judge

In this Rails-to-Trails case, plaintiffs own real property adjacent to railroad rights-of-way in southwestern Indiana. They contend that the United States violated the Just Compensation Clause of the Fifth Amendment to the United States Constitution by authorizing the conversion of the railroad rights-of-way into recreational trails pursuant to the National Trail Systems Act ("Trails Act"), thus acquiring their property by inverse condemnation. Both plaintiffs and defendant move for partial summary judgment on the issue of liability. For the reasons set forth below, the court grants in part and denies in part the parties' motions.

# I.  BACKGROUND

## A.  Statutory and Regulatory Context

During the last century, the United States began to experience a sharp reduction in rail trackage.  Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 5 (1990).  To remedy this problem, Congress enacted a number of statutes, including the Trails Act, 16 U.S.C. §§ 1241-1251 (2012).  The Trails Act, as amended, provides for the preservation of "established railroad rights-of-way for future reactivation of rail service" by authorizing the interim use of such rights-of-way as recreational and historical trails.  Id. § 1247(d).  This process is referred to as "railbanking," and is overseen by the Surface Transportation Board ("Board"), id., the federal agency with the exclusive jurisdiction to regulate "the construction, acquisition, operation, abandonment, or discontinuance" of most railroad lines in the United States, 49 U.S.C. § 10501(b) (2012).

Before railbanking can occur, the railroad company must seek to abandon its line, either by initiating abandonment proceedings with the Board pursuant to 49 U.S.C. § 10903, or by requesting that the Board exempt it from such proceedings pursuant to 49 U.S.C. § 10502.  While considering the railroad company's abandonment application or exemption request, the Board will entertain protests and comments from interested third parties.  49 C.F.R. §§ 1152.25, 1152.29(a) (2010).  Of particular relevance in this case, interested third parties may submit requests for the interim use of the railroad line as a trail pursuant to 16 U.S.C. § 1247(d) and make offers of financial assistance ("OFA") pursuant to 49 U.S.C. § 10904.  Id.

If an interested third party submits a trail use request to the Board that satisfies the requirements of 16 U.S.C. § 1247(d), the Board makes the necessary findings pursuant to 49 U.S.C. § 10502(a) or 49 U.S.C. §10903(d), and the railroad company agrees to negotiate a trail use agreement, the Board will issue one of two documents:  if the railroad company initiated abandonment proceedings, the Board will issue a Certificate of Interim Trail Use or Abandonment, and if the railroad company sought an exemption, the Board will issue a Notice of Interim Trail Use or Abandonment ("NITU").  Id. § 1152.29(b)-(d).  The effect of both documents is the same:  to "permit the railroad to discontinue service, cancel any applicable tariffs, and salvage track and materials, consistent with interim trail use and rail banking . . . ; and permit the railroad to fully abandon the line if no agreement is reached 180 days after it is issued, subject to appropriate conditions . . . ."  Id. § 1152.29(d)(1); accord id. § 1152.29(c)(1).  The Board will entertain requests to extend the 180-day deadline to enable further negotiations.  If the railroad company and the interested third party execute a trail use agreement, then abandonment of the railroad line is stayed for the duration of the agreement.  Id. § 1152.29(c)-(d); 16 U.S.C. § 1247(d).  If no trail use agreement is executed, the railroad company is permitted to fully abandon the line.  49 C.F.R. § 1152.29(c)-(d).  To exercise its abandonment authority, the railroad company must "file a notice of consummation with the Board to signify that it has . . . fully abandoned the line" within one year of "the service date of the decision permitting the

abandonment . . . ."  Id. § 1152.29(e)(2).  In the absence of a timely filed notice of
consummation, the railroad company's authority to abandon the line automatically expires.  Id.

Abandonment of a railroad line may also be postponed if an interested third party makes
an OFA to subsidize or purchase the railroad line to continue rail service.  Id. § 1152.27; 49
U.S.C. § 10904.  OFAs must be made and filed with the Board within four months of the railroad
company's application for abandonment or request for an exemption, or within ten days of the
Board's decision granting the railroad company's application or request, whichever is sooner.  49
U.S.C. § 10904(c); 49 C.F.R. § 1152.27(b).  "The Board will review each offer submitted to
determine if a financially responsible person has offered assistance.  If that criterion is met, the
Board will issue a decision postponing the effective date of" its abandonment authorization or
decision granting an exemption, as appropriate.  49 C.F.R. § 1152.27(e)(1)-(2); accord 49 U.S.C.
§ 10904(d)(1).  Abandonment is postponed until the railroad company and "a financially
responsible person have reached an agreement on a transaction for subsidy or sale of the line" or,
if an agreement is not reached, the Board establishes the conditions and amount of compensation
for the transaction. 49 U.S.C. § 10904(d)(2).  If an agreement is reached, abandonment of the
line will not proceed.  49 C.F.R. § 1152.27(f).  If no agreement is reached, the Board will vacate
its decision postponing the effective date of its abandonment authorization or decision granting
an exemption, id. § 1152.27(g)(2), (h)(7), allowing the railroad company to consummate the
abandonment.

If efforts to execute a trail use agreement, purchase agreement, or subsidy agreement are
unsuccessful, and the railroad company notifies the Board that it has fully abandoned the line, the
Board is divested of jurisdiction over the abandoned railroad line and "state law reversionary
property interests, if any, take effect."  Caldwell v. United States, 391 F.3d 1226, 1228-29 (Fed.
Cir. 2004).

## B.  The Initial Acquisition of the Railroad Rights-of-Way

Plaintiffs own real property adjacent to segments of railroad rights-of-way in Posey and
Vanderburgh Counties, Indiana situated between (1) milepost 227.5 at Poseyville, Indiana and
milepost 240.2 near German Township, Indiana and between (2) milepost 277.5 at Cynthiana,
Indiana and milepost 282.0 at Poseyville, Indiana.[1]  The rights-of-way were acquired by the
predecessors of the current owner of the railroad lines, Indiana Southwestern Railway Company
("Indiana Southwestern").  Those predecessor railroad companies acquired a 4.42-acre segment
of the rights-of-way through prescription; plaintiff Reibel Farms, Inc. owns a parcel of land
adjacent to this segment.  The remaining segments at issue were acquired by deed.  Plaintiffs
group the deeds, all dated between 1880 and 1882, into four categories.  The seven deeds in the
first group ("Type A deeds") contain language that is substantially similar to the following:

---

[1]  The court derives the facts in this decision from the exhibits attached to the parties'
cross-motions for partial summary judgment on liability.  The facts are undisputed.

Right of Way Deed

Know all men by these Presents that [named landowner] for and in consideration
of the construction of the [railroad] and for the further consideration of [amount],
do grant, warrant and convey to the said [predecessor railroad company] its
successors and assigns a strip of land [number] feet in width, being a strip
[number] feet wide on each side of the center line of said Railway as it now is
located through his land . . . described as follows to wit:  [description of land].  It
being distinctly understood that this grant is for the purpose of construction,
maintenance and operation of said Railway.

Pls.' Ex. 15; accord Pls.' Exs. 16-20; Pls.' Ex. 21 (containing similar language, but with the last
sentence instead providing:  "It being distinctly understood that the above described Real Estate
is to be used exclusively for Railroad purposes.").  The amounts of consideration set forth in
these deeds and the approximate land area conveyed are as follows:

| Grantor(s) | Amount | Area |
|---|---|---|
| W. Marquis | $100 | 2.75 acres |
| N. Marquis et al. | $100.24 | Unspecified portion of 3.5 acres |
| A.H. Fretageot et al. | $20.05 | Unspecified portion of 3.5 acres |
| J. Owens et al. | $60.14 | Unspecified portion of 3.5 acres |
| M. Endecott | $1,000 | 8.24 acres |
| L. Williams and wife | $1 | 1.44 acres |
| L. Williams and wife | $250 | 0.97 acres |

Plaintiffs Owen Halpeny, Jeffrey Memmer, and Joseph Jenkins own parcels of land adjacent to
the land conveyed by the Type A deeds.

The six deeds in the second group ("Type A-1 deeds") contain language that is
substantially similar to the following:

Know all men by these Presents that [named landowners] for and in consideration
of the construction of the [railroad] and for the further consideration of [amount],
do grant, warrant and convey to the said [predecessor railroad company], its
successors and assigns, a strip of Land [number] feet in width, being a Strip
[number] feet wide on each side of the center line of said Railway as it now is
Located through his Land . . . , described a follows, to wit:

-4-

[description of land]

It being distinctly understood that this grant is for the purpose of construction, maintenance and operation of said Railway.

Pls.' Ex. 22; <u>accord</u> Pls.' Exs. 23-27. The amounts of consideration set forth in these deeds and the approximate land area conveyed are as follows:

| Grantor(s) | Amount | Area |
|---|---|---|
| H. Hillenbrand and wife | $400 | 4.45 acres |
| H. Goebel and wife | $75 | 2.04 acres |
| S. McDonald et al. | $100 | 1.92 acres |
| A.N. Martin and wife | $700 | 6.04 acres |
| H.L. Graff and wife | $175 | 3.07 acres |
| A.R. Grimm | $257.50 | 5.16 acres |

Plaintiffs Larry and Susan Goebel; McDonald Family Farms of Evansville, Inc.; Michael and Rita Martin; Gilbert Effinger; and James and Robin Schmidt own parcels of land adjacent to the land conveyed by the Type A-1 deeds.

Plaintiffs include two deeds in a third group ("Type B deeds"), but the deeds are not substantially identical. The first Type B deed ("the Smith deed") provides:

Right of Way Deed

Know all men by these presents, that Elizabeth Smith for and in consideration of the Benefits to be derived from the construction of the [railroad] and for the further consideration of [$100] do grant, warrant and Convey to the said [predecessor railroad company] its successors and assigns a Strip of land [number] feet in width being a Strip [number] feet wide on Each Side of the center line of said Rail Road as it now is located through her land . . . described as follows to wit: [description of land.] [I]t is hereby understood that Said Rail Road Company shall make one good farm crossing for the use and benefit of Said Elizabeth Smith said crossing to be made at a point to be designated by the Said Elizabeth Smith.

Pls.' Ex. 28. With this deed, Ms. Smith conveyed approximately 1.22 acres, and this acreage is adjacent to a parcel owned by plaintiff Matthew Hostettler.

The second Type B deed ("the Davis deed") provides:

Right of Way Deed

Know all men by these Presents, That [Joseph Davis and Mary C. Davis], for and in consideration of the benefits to be derived from the construction of the [railroad], and for the further consideration of [$175] do grant, warrant and convey to the said [predecessor railroad company], its successors and assigns, a strip of Land [number] feet in width, being a strip [number] feet wide, in each side of the center line of said Railroad as it now is located through his land . . . , described as follows to wit:  [description of land] and it is hereby understood that the said Joseph Davis shall have the right to a water canal along said line on the south side of said R.R. on said strip of land [and] that said Joseph Davis reserves the timber on said right of way and that said R.R. Co. shall make one good crossing for the use and benefit of said Davis wherever he may designate.

Pls.' Ex. 29.  With this deed, the Davises conveyed approximately 2.4 acres, and this acreage is adjacent to a parcel owned by plaintiff Reibel Farms, Inc.

The final category identified by plaintiffs contains one deed ("the side track deed"), which provides:

This Indenture Witnesseth That [Abner N. Martin and Cynthia Martin] Convey and Warrant to [predecessor railroad company] for the sum of [$1] the following Real Estate . . . to wit: [description of land].  The same to be theirs and their own a[s] long as said Side track and Depot are in use any failure or removal will make this Deed none and void.

Pls.' Ex. 30.  With this deed, the Martins conveyed approximately 0.66 acres, and this acreage is adjacent to a parcel owned by plaintiffs Michael and Rita Martin.  As of March 1993, no side track or depot existed on the acreage.

## C.  Proceedings Before the Board

Indiana Southwestern decided that it no longer needed the railroad lines at issue in this case.  Thus, on October 25, 2010, it submitted to the Board a notice of exemption to abandon the lines.  Two interested third parties sought to prevent abandonment.  Indiana Trails Fund, Inc. filed a request for the interim use of the railroad lines as a trail on November 17, 2010.  The following day, the Town of Poseyville, Indiana ("Town") submitted a notice of its intent to file an OFA.

In a December 23, 2010 decision, the director of the Board's Office of Proceedings concluded that the Town was financially responsible and therefore postponed the effective date

of the exemption authorizing abandonment.  With respect to the trail use request, the director noted that because Indiana Trails Fund, Inc. had satisfied the statutory requirements and that Indiana Southwestern had agreed to negotiate a trail use agreement, the issuance of a NITU "would be appropriate commencing with the effective date of the exemption."  Def.'s Ex. 6 at 5. "However," she noted:

> an OFA takes priority over a request for issuance of a NITU . . . .  Therefore, issuance and effectiveness of the NITU . . . will be delayed until the OFA process has been completed.  If agreement is reached on the sale of the line, the NITU . . . would be unnecessary and unavailable.  If no agreement is reached on the OFA, the appropriate decision will be issued.

Id.

Indiana Southwestern appealed the director's determination that the Town was a financially responsible offeror to the Board.  In a decision bearing a service date of April 8, 2011, the Board concluded that the Town was not financially responsible for the purposes of proceeding with the OFA process.  The Board then declared that its decision would become effective on May 23, 2011, and that it would "impose the trail use condition" on the decision's effective date.  Pls.' Ex. 1 at 7.  Specifically, the Board ordered:

> 3.  The abandonment exemption will become effective on May 23, 2011 . . . , for a period of 180 days from May 23, 2011, until November 19, 2011, to enable any state or local government agency, or other interested person, to negotiate the acquisition of the lines for public use.  . . .

> . . . .

> 7.  If an agreement for interim trail use/rail banking is reached by November 19, 2011, and notice [sic], trail use may be implemented.  If no agreement is reached by that time, [Indiana Southwestern] may fully abandon the line . . . .

Id. at 7-8.  Thus, the Board's decision–served on April 8, 2011 and made effective on May 23, 2011–constituted a NITU.[2]

Indiana Southwestern and Indiana Trails Fund, Inc. sought and received several extensions of the initial 180-day period to negotiate a trail use agreement, culminating in a deadline of November 8, 2013.  Because the parties neither executed a trail use agreement nor sought another extension of time by that deadline, the NITU expired on its own terms.  As a

---

[2]  The Board denied the Town's request for reconsideration in a September 23, 2011 decision, therefore leaving its April 8, 2011 decision intact.

result, Indiana Southwestern had one year in which to fully abandon the railroad lines. However, it has not filed a notice of consummation with the Board.

### D.  Procedural History

On February 18, 2014, Jeffrey Memmer, for himself and as representative of a class of similarly situated individuals, filed a complaint in this court alleging a Fifth Amendment taking. In a subsequently filed amended complaint, Mr. Memmer and twelve other named plaintiffs continue to assert, as their sole claim for relief, a Fifth Amendment taking. In particular, plaintiffs allege that they own their property in fee simple; that prior to the Board's issuance of the NITU, Indiana Southwestern owned easements across their property; that their property would no longer be burdened by those easements if the easements were abandoned or authorized for use beyond their scope; and that but for the issuance of the NITU, they "would have the exclusive right to physical ownership, possession, and use of their property free of any easement for recreational trail use or future railroad use."[3]  Am. Compl. ¶ 17.  Plaintiffs accordingly request just compensation for the taking.

After engaging in discovery regarding liability, the parties filed cross-motions for partial summary judgment on liability. The motions are fully briefed, and the court heard argument on July 9, 2015.

## II.  DISCUSSION

Both plaintiffs and defendant have moved for summary judgment on the issue of liability pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. RCFC 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Entry of summary judgment is mandated against a party who fails to establish "an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### A.  Fifth Amendment Takings and the Trails Act

As noted above, the sole claim for relief in plaintiffs' amended complaint is a Fifth Amendment takings claim. The Fifth Amendment prohibits the federal government from taking private property for public use without paying just compensation. U.S. Const. amend. V. The United States Court of Federal Claims ("Court of Federal Claims") possesses jurisdiction to entertain Fifth Amendment takings claims against the United States, 28 U.S.C. § 1491(a)(1) (2012); Morris v. United States, 392 F.3d 1372, 1375 (Fed. Cir. 2004), such as claims premised upon the conversion of a railroad right-of-way into a recreational trail pursuant to the Trails Act, Preseault, 494 U.S. at 12-13.

---

[3] The amended complaint does not contain class allegations.

To establish a taking, a plaintiff must first "identif[y] a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking." Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1348 (Fed. Cir. 2013). In determining whether a plaintiff has demonstrated the existence of a valid property interest in a Trails Act case, the court considers:

> (1) who owned the strips of land involved, specifically did the Railroad . . . acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

Preseault v. United States, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (en banc). Then, "if the court concludes that a cognizable property interest exists, it determines whether the government's action amounted to a compensable taking of that interest." Casitas Mun. Water Dist., 708 F.3d at 1348. In Trails Act cases, a taking occurs when "government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement." Ladd v. United States, 630 F.3d 1015, 1019 (Fed. Cir. 2010). It is well settled that the Board's issuance of "[t]he NITU is the government action that prevents the landowners from possession of their property unencumbered by the easement." Id.; accord Barclay v. United States, 443 F.3d 1368, 1374 (Fed. Cir. 2006); Caldwell, 391 F.3d at 1233-34.

## B. The Interests Obtained by Indiana Southwestern's Predecessors

The parties' first dispute concerns the nature of the property interests acquired by Indiana Southwestern's predecessors. Although the parties agree that the right-of-way acquired through prescription constitutes an easement under Indiana law, see also Hoffman v. Zollman, 97 N.E. 1015, 1017 (Ind. App. 1912) ("[A] railroad company only acquires an easement in land . . . by prescription."), they disagree as to the type of property interest conveyed by the sixteen deeds at issue. Plaintiffs assert that the deeds conveyed easements to Indiana Southwestern's predecessors, while defendant contends that the deeds conveyed property in fee simple.

To determine the nature of the property interests conveyed by the deeds, the court must examine the deeds in light of the common law and the law of Indiana at the time that they were executed. Preseault, 100 F.3d at 1534; Clark v. CSX Transp., 737 N.E.2d 752, 758 (Ind. Ct. App. 2000). At the time the deeds were executed, Indiana law provided:

> Any conveyance of lands worded in substance as follows: "A.B. conveys and warrants to C.D." [here describe the premises] "for the sum of" [here insert the consideration] the said conveyance being dated and duly signed, sealed and

> acknowledged by the grantor, shall be deemed and held to be a conveyance in fee simple to the grantee, his heirs and assigns . . . .

Ind. Rev. Stat. ch. 23, § 12 (1852) (recodified at Ind. Rev. Stat. ch. 18, § 2927 (1881)). Further, "if it be the intention of the grantor to convey any lesser estate, it shall be so expressed in the deed." Id. § 14 (recodified at Ind. Rev. Stat. ch. 18, § 2929 (1881)). Of course, not all deeds conform to the statutory language. With respect to such deeds:

> There are several rules of construction to be used when construing the meaning of a particular deed. The object of deed construction is to ascertain the intent of the parties. In so doing, a deed is to be regarded in its entirety and the parts are to be construed together so that no part is rejected. Where there is no ambiguity in the deed, the intention of the parties must be determined from the language of the deed alone. . . .

> A deed that conveys a <u>right</u> generally conveys only an easement. The general rule is that a conveyance to a railroad of a strip, piece, or parcel of land, without additional language as to the use or purpose to which the land is to be put or in other ways limiting the estate conveyed, is to be construed as passing an estate in fee, but reference to a right-of-way in such a conveyance generally leads to its construction as conveying only an easement.

<u>Brown v. Penn Cent. Corp.</u>, 541 N.E.2d 641, 643-44 (Ind. 1987) (citations omitted); <u>accord Ross, Inc. v. Legler</u>, 199 N.E.2d 346, 348 (Ind. 1964) ("A deed, when the interest conveyed is defined or described as a 'right of way,' conveys only an easement in which title reverts to the grantor, his heirs or assigns upon the abandonment of such right-of-way."); <u>Richard S. Brunt Trust v. Plantz</u>, 458 N.E.2d 251, 256 (Ind. Ct. App. 1983) (considering a deed in which the grantors "convey[ed] and quit claim[ed] . . . , for railroad purposes, the following real estate," and holding that "[r]eference to the intended use of the land indicate[d] that an easement was conveyed" because "the grantors would have no reason to specify the use if conveying a fee simple"). <u>But see</u> <u>Poznic v. Porter Cnty. Dev. Corp.</u>, 779 N.E.2d 1185, 1190-92 (Ind. Ct. App. 2002) (holding that a deed that conveyed to the railroad company "<u>Forever</u>, a strip of land for railroad purposes" conveyed a fee simple and, in so holding, declined to treat the phrase "for railroad purposes" as limiting language, noted that the deed did not include a statement indicating that the deed would be void if the strip of land was not used for railroad purposes, and remarked that the deed did not include the term "right-of-way").

"Deeds generally contain three important clauses: the granting clause, the habendum clause, and the descriptive clause."[4] <u>Clark</u>, 737 N.E.2d at 758. Reference to a "right-of-way"

---

[4] The granting clause contains "[t]he words that transfer an interest in a deed or other instrument," <u>Black's Law Dictionary</u> 769 (9th ed. 2009); the habendum clause is the part of a deed or other instrument "that defines the extent of the interest being granted and any conditions

may appear in any of them.  See, e.g., Ross, Inc., 199 N.E.2d at 349 (rejecting, as "an overrefinement of the rules of construction," the contention that use of the term "right-of-way" in the descriptive clause of a deed is meaningless when the term is not included in the deed's granting clause or habendum clause, and holding that "[t]he description clause of a deed may be employed to describe the quality as well as the dimensions and quantity of the estate conveyed"); CSX Transp., Inc. v. Rabold, 691 N.E.2d 1275, 1278 (Ind. Ct. App. 1998) (holding that when the term "right-of-way" is used in the descriptive clause "in reference to the subject matter of the deed," and the deed does not contain the term "fee simple," the deed conveys an easement); see also Prior v. Quackenbush, 29 Ind. 475, 478 (1868) ("The office of the habendum is properly to determine what estate or interest is granted by the deed, though this may be performed, and sometimes is performed, by the premises, in which case the habendum may lessen, enlarge, explain, or qualify, but not totally contradict or be repugnant to the estate granted in the premises." (internal quotation marks omitted)); Claridge v. Phelps, 11 N.E.2d 503, 504 (Ind. App. 1937) ("[W]hen the granting clause of a deed is general or indefinite respecting the estate in the lands conveyed, it may be defined, qualified, and controlled by the habendum.").  But see Clark, 737 N.E.2d at 758 (remarking that when the term "right-of-way" appears "outside of the granting clause, the term is of limited value because it has two meanings[:] 1) a right to cross over the land of another, an easement, and 2) the strip of land upon which a railroad is constructed").  Indeed, even if the granting clause "favors the construction of the deed as conveying a fee simple absolute to the railroad company, such language is just a factor in determining whether the parties intended to grant a fee or an easement"; courts will also examine "other parts of the deed to see if the grantor expressed an intention to convey a lesser estate than fee simple."  Tazian v. Cline, 686 N.E.2d 95, 98 (Ind. 1997).

        In addition to language expressly defining or describing the interest conveyed, evidence of the parties' intent to convey an easement may appear in the title of the deed.  See Clark, 737 N.E.2d at 758 (remarking that although "the cover and title of the instrument" are not considered "where the granting language is clear and unambiguous[,] . . . the title may provide additional evidence of intent where the language of the deed is unclear").  Such evidence may also include the amount or type of consideration described in the deed.  See Tazian, 686 N.E.2d at 99 ("When attempting to ascertain the intent of the parties to a conveyance to a railroad, appellate courts of this state look at the consideration paid to the grantee railroad."); Richard S. Brunt Trust, 458 N.E.2d at 255 ("[W]here the consideration is nominal or where the only consideration is the benefit to be derived by the grantor from the construction of the railroad rather than the full market value for the interest acquired reflects the intent to create an easement.").  However, neither the title of the deed nor the consideration described therein conclusively establishes the conveyance of an easement.  See Clark, 737 N.E.2d at 758 ("[T]he title . . . is not dispositive of the nature of the conveyance."); id. at 759 ("[L]ack of consideration or nominal consideration alone is not sufficient cause for setting aside a deed.  . . .  [N]ominal monetary consideration,

affecting the grant," id. at 778; and the descriptive clause contains "the dimensions and quantity of the estate conveyed," Ross, Inc., 199 N.E.2d at 349.

alone, does not make the instrument ambiguous, nor does it create an easement."); <u>Richard S. Brunt Trust</u>, 458 N.E.2d at 255 ("Although such consideration is not by itself persuasive that the parties intended to convey an easement, it is just one more factor held to indicate an easement . . . .").

Ultimately, in construing deeds purporting to convey property interests to a railroad company, courts must be cognizant that:

> Public policy does not favor the conveyance of strips of land by simple titles to railroad companies for right-of-way purposes, either by deed or condemnation. This policy is based upon the fact that the alienation of such strips or belts of land from and across the primary or parent bodies of the land from which they are severed, is obviously not necessary to the purpose for which such conveyances are made after abandonment of the intended uses as expressed in the conveyance, and that thereafter such severance generally operates adversely to the normal and best use of all the property involved. Therefore, where there is ambiguity as to the character of the interest or title conveyed such ambiguity will generally be construed in favor of the original grantors, their heirs and assigns.

<u>Ross, Inc.</u>, 199 N.E.2d at 348; <u>see also</u> <u>Penn Cent. Corp. v. U.S. R.R. Vest Corp.</u>, 955 F.3d 1158, 1160 (7th Cir. 1992) ("The presumption is that a deed to a railroad . . . conveys a right of way, that is, an easement, terminable when the acquirer's use terminates, rather than a fee simple.").

Having set forth the relevant rules of deed construction, the court will now examine the deeds at issue in this case.

## 1. The Type A Deeds

The seven Type A deeds identified by plaintiffs share the following characteristics: (1) they bear the title "Right of Way Deed"; (2) they "grant, warrant and convey . . . a strip of land"; and (3) they indicate either that the "grant is for the purpose of construction, maintenance and operation" of a railroad or that the "Real Estate is to be used exclusively for Railroad purposes." Plaintiffs assert that because the grants in these deeds were made for railroad purposes, the grantors conveyed easements to Indiana Southwestern's predecessors. They further contend that their position is supported by the public policy disfavoring conveyances of strips of land in fee simple to railroads, the reference to "Right of Way" in the title of the deeds, and the presumption that deeds to railroad companies convey easements. Defendant disagrees with plaintiffs' construction of the Type A deeds. It argues that the granting clauses of these deeds unambiguously reflect that the strips of land were conveyed in fee simple, and that neither the "railroad purposes" language nor the title of the deeds alter that unambiguous grant. Defendant's position is not sustainable.

-12-

The granting clauses in the deeds conveyed strips of land to Indiana Southwestern's predecessors for varying amounts of consideration. If the deeds contained nothing more than the granting clauses, then they would have conveyed fee simple interests in the strips of land. See Ind. Rev. Stat. ch. 23, § 12 (1852). However, the deeds also included habendum clauses indicating that the strips of land were to be used for railroad purposes. The habendum clauses qualify, without contradicting, the estates conveyed in the granting clauses. See Prior, 29 Ind. at 478; Claridge, 11 N.E.2d at 504. Indeed, had the parties intended to convey fee simple interests in the strips of land, they would have had no reason to specify the use of the land in the habendum clauses. See Richard S. Brunt Trust, 458 N.E.2d at 256. Because deeds should be construed so that no part is superfluous, Brown, 541 N.E.2d at 643, the court concludes that the parties intended to convey easements, and not fee simple interests, in the strips of land. This conclusion is buttressed by the fact that these deeds were recorded with the title "Right of Way Deed."[5] See Clark, 737 N.E.2d at 758. Moreover, to the extent that the "railroad purposes" language in the habendum clause renders the deed ambiguous, public policy favors construing the deeds as conveying easements. See Ross, Inc., 199 N.E.2d at 348.

The Indiana Supreme Court's decision in Tazian, relied upon by defendant, does not compel a different result. In Tazian, the deed's granting clause provided: "[The grantors] do grant and convey and warrant . . . a strip of land . . . ." 686 N.E.2d at 96. The habendum clause provided that the railroad company was "to have and to hold all and singular the said premises in and by these presents released and conveyed unto the [railroad company] forever for the uses and purposes therein expressed." Id. As the Indiana Supreme Court explained, the phrase "for the uses and purposes therein expressed" referred to the uses and purposes described in the granting clause, and the granting clause contained no limitation on the uses and purposes of the strip of land. Id. at 101; accord id. ("[T]his deed does not describe the interest conveyed as a railroad right of way nor does the language limit the conveyance as for railroad purposes or railroad uses."). In contrast, the habendum clauses in the seven Type A deeds specified the uses and purposes of the strips of land that were the subjects of the granting clauses. The court in Tazian found further support for its conclusion that the deed conveyed a fee simple interest to the railroad company in the use of the word "forever" in the habendum clause. Id. The Type A deeds do not specify that the grant to Indiana Southwestern's predecessors was to be in perpetuity. In sum, the decision in Tazian does not control the outcome in this case. The Type A deeds conveyed easements.

---

[5] Plaintiffs contend that the consideration paid by the railroad companies was nominal, supporting their contention that the parties to the deeds intended to convey easements. Aside from the two deeds that describe monetary consideration of one dollar, the court is unable to determine whether the consideration paid was nominal because the record lacks any evidence regarding the value of land in southwestern Indiana in the late 1800s.

## 2.  The Type A-1 Deeds

The six Type A-1 deeds identified by plaintiffs share the following characteristics:  (1) they "grant, warrant and convey . . . a strip of Land" and (2) they indicate that the "grant is for the purpose of construction, maintenance and operation" of a railroad.  But for the lack of titles identifying them as right-of-way deeds, the Type A-1 deeds are substantially the same as the Type A deeds previously described.  Consequently, the court concludes that the parties to the Type A-1 deeds intended to convey easements, and not fee simple interests, in the strips of land.

## 3.  The First Type B Deed

The first Type B deed identified by plaintiffs–the Smith deed–possesses the following characteristics:  (1) it is titled "Right of Way Deed"; (2) it reflects that the grantor did "grant, warrant and Convey . . . a Strip of land"; and (3) it does not indicate that the strip of land would be used for railroad purposes.  Plaintiffs argue that the title of the deed, in conjunction with the public policy disfavoring fee simple conveyances of strips of land to railroads, support treating the deed as conveying an easement to Indiana Southwestern's predecessor.  In response, defendant contends that the title of the deed, without any language in the body of the deed referring to the grant as a right-of-way or limiting the grant to railroad purposes, is insufficient to treat the deed as conveyance of an easement.  Defendant is correct; this deed is not ambiguous.

As defendant notes, the body of the deed–the granting clause, the habendum clause, and the descriptive clause–does not include any language that describes the strip of land being conveyed as a right-of-way or limits the use of the strip of land to railroad purposes.  In such circumstances, the deed conveys a fee simple estate.  See Brown, 541 N.E.2d at 644; accord Ind. Rev. Stat. ch. 23, §§ 12, 14 (1852).  The fact that the deed is titled "Right of Way Deed" does not alter the unambiguous nature of the conveyance.  See Clark, 737 N.E.2d at 758.  Nor can public policy override an unambiguous grant.  See Ross, Inc., 199 N.E.2d at 348.  In short, the Smith deed conveys a fee simple estate in the described strip of land.[6]  And because Indiana Southwestern owns the strip of land in fee simple, the issuance of the NITU could not have disturbed the property rights of the adjacent property owner–plaintiff Matthew Hostettler.  Defendant is therefore entitled to summary judgment with respect to the Smith deed.

---

[6]  Plaintiffs argue that the parties to this deed, as well as the parties to the Davis deed and the side track deed, may have unintentionally conveyed a fee simple estate due to poor drafting. If so, it is unfortunate, but poor drafting cannot overcome unambiguous language contained within the four corners of the deed.  As the Indiana Supreme Court has held, "[w]here there is no ambiguity in the deed, the intention of the parties must be determined from the language of the deed alone."  Brown, 541 N.E.2d at 643.

#### 4.  The Second Type B Deed

The second Type B deed identified by plaintiffs–the Davis deed–possesses the following characteristics:  (1) it is titled "Right of Way Deed"; (2) it reflects that the grantors did "grant, warrant and Convey . . . a Strip of land"; (3) it indicates in the habendum clause that the grantors had "the right to a water canal along said line on the south side of said R.R. on said strip of land" and "reserve[d] the timber on said right of way"; and (4) it does not indicate that the strip of land would be used for railroad purposes.  In contrast to the Smith deed, the Davis deed refers to the strip of land as a right-of-way in the habendum clause.  Plaintiffs ignore the use of the term "right-of-way" in the body of the Davis deed, and defendant erroneously asserts that the term was not used at all in the body of either Type B deed.  However, because the court must construe the deed as a whole, Brown, 541 N.E.2d at 643, it cannot disregard the term's presence in the deed.

The presence of the term "right-of-way" in the body of a deed can signal that the deed conveys an easement.  See id. at 644; Ross, Inc., 199 N.E.2d at 348-49; CSX Transp., Inc., 691 N.E.2d at 1278.  However, the term "right-of-way" has two meanings; it can refer to both the right to cross land and the land itself.  Clark, 737 N.E.2d at 758; CSX Transp., Inc., 691 N.E.2d at 1278.  In the Davis deed, the habendum clause indicates that the grantors reserved the right to a water canal on the south side of the railroad "on said strip of land," and the right to the timber "on said right of way."  Thus, a plain reading of the habendum clause reveals that "right of way" is being used as a synonym for "strip of land," and therefore refers to the land itself, and not the right to cross it.

Because the body of the deed does not include any language that describes the strip of land being conveyed as a right-of-way or limits the use of the strip of land to railroad purposes, the deed conveys a fee simple estate.  See Brown, 541 N.E.2d at 644; accord Ind. Rev. Stat. ch. 23, §§ 12, 14 (1852).  As with the Smith deed, the fact that the Davis deed is titled "Right of Way Deed" does not alter the unambiguous nature of the conveyance.  See Clark, 737 N.E.2d at 758.  Nor can public policy override an unambiguous grant.  See Ross, Inc., 199 N.E.2d at 348.  In short, the Davis deed conveys a fee simple estate in the described strip of land.  And because Indiana Southwestern owns the strip of land in fee simple, the issuance of the NITU could not have disturbed the property rights of the adjacent property owner–plaintiff Reibel Farms, Inc.  Defendant is therefore entitled to summary judgment with respect to the Davis deed.

#### 5.  The Side Track Deed

The side track deed reflects that (1) the grantors did "Convey and Warrant . . . Real Estate" to the railroad company, (2) the consideration paid by the railroad company was one dollar, (3) the real estate would remain with the railroad company "a[s] long as said Side track and Depot are in use," and (4) "any failure or removal will make this Deed none and void."  Plaintiffs, relying on the decision in Macy Elevator, Inc. v. United States, 97 Fed. Cl. 708 (2011), contend that the language indicating that the railroad company's failure to maintain a side track and depot on the land would nullify the deed reflects that the deed was for railroad purposes, and

that as a result, the deed conveyed an easement.  Plaintiffs further assert that the nominal consideration described in the deed is additional evidence of the parties' intent to convey an easement.  Defendant, citing the dissenting opinion in Ross, Inc., responds that the side track deed conveys a fee simple subject to a condition subsequent; in other words, the deed conveys land that would revert to the grantors or their successors if the railroad company breached its agreement to maintain a side track and depot.  Defendant argues that Indiana has a statute of repose that operates to prevent plaintiffs from bringing an action to recover the parcel described in the side track deed.  Neither plaintiffs' nor defendant's arguments are entirely persuasive.

As an initial matter, plaintiffs' reliance on Macy Elevator, Inc. is misplaced.  In that case, one of the deeds at issue provided:  "When said land herein released Shall cease to be used for Rail Road purposes, it shall revert back to the original tract."  97 Fed. Cl. at 716.  Another deed provided:  "Said land 66 feet wide to be held and enjoyed by Said RailRoad Company So long as it shall be used for a Rail Road & no longer."  Id.  However, unlike the side track deed, the granting clauses in the Macy Elevator, Inc. deeds specifically identified the land being conveyed as rights-of-way.  Id.  Thus, the fact that the parties and the court agreed that the deeds conveyed easements, see id. at 718, has no bearing on whether the side track deed conveys an easement.

Indeed, the side track deed lacks any of the typical language suggesting that it conveys an easement rather than a fee simple; the term "right-of-way" is not used, there is no statement that the "Real Estate" being conveyed is to be used for "railroad purposes," and the existence of nominal consideration, on its own, does not create an easement.  See Ind. Rev. Stat. ch. 23, §§ 12, 14 (1852); Brown, 541 N.E.2d at 644; Clark, 737 N.E.2d at 759; Richard S. Brunt Trust, 458 N.E.2d at 255.  Instead, the language relied upon by plaintiffs–indicating that the railroad company's failure to maintain a side track and depot on the land would nullify the deed–subjects the conveyance to a condition.  In general, such conditions are disfavored in Indiana, "so that 'nothing short of express provisions for forfeiture and either a reverter . . . or a right to retake the property'" will impose one.  Girl Scouts of S. Ill. v. Vincennes Ind. Girls, Inc., 988 N.E.2d 250, 256 (Ind. 2013) (quoting St. Mary's Med. Ctr. v. McCarthy, 829 N.E.2d 1068, 1075-76 (Ind. Ct. App. 2005)); see also Sheets v. Vandalia R.R. Co., 127 N.E. 609, 611 (Ind. App. 1920) ("A condition . . . may be created by any words which show a clear and unmistakable intention on the part of the grantor to create an estate on condition; regard being had to the whole of the deed in which they occur.  The word 'condition' need not necessarily be used, but words importing a condition must be used, or plainly inferred from the instrument, and the existing facts.").  However, like the deed at issue in Girl Scouts of Southern Illinois,[7] the side track deed meets

---

[7]  The deed in Girl Scouts of Southern Illinois provided:

[T]he conveyance of which real estate . . . shall be upon and subject to the condition that such real estate . . . shall revert to [the grantor] if the same are not used for and as a Girl Scouts camping site and facilities for a period of forty-nine

these strict requirements.  There is an express condition for forfeiture–"a[s] long as said Side track and Depot are in use"–and a reverter–"any failure or removal will make this Deed none and void."  Accordingly, the side track deed conveys a fee simple subject to a condition subsequent, and not an easement.  See also Restatement (First) of Property § 45 (1936) ("An estate in fee simple subject to a condition subsequent is created by any limitation which, in an otherwise effective conveyance of land, (a) creates an estate in fee simple; and (b) provides that upon the occurrence of a stated event the conveyor or his successor in interest shall have the power to terminate the estate so created.").  This fact is dispositive of plaintiffs' Fifth Amendment takings claim.

At some point in time prior to March 1993, one of Indiana Southwestern's predecessors removed the side track and depot from the parcel conveyed by the side track deed.  The removal constituted a breach of the condition subsequent.  However, fee simple title to the parcel did not automatically revert to the grantors or their successors.  See Preston v. Bosworth, 55 N.E. 224, 224 (Ind. 1899) ("[A] breach [of a condition subsequent] does not complete a forfeiture.  A breach may be waived, and is not, therefore, self-operative to devest the grantee's title.").  Rather, the grantors or their successors were required to either reenter or demand possession of the parcel and then, if necessary, commence an action to enforce the forfeiture of the estate.  See id. ("If not waived, a breach may be made the occasion of re-entry and enforcement of forfeiture."); Aetna Life Ins. Co. v. Sellers, 56 N.E. 97, 98 (Ind. 1900) (noting "that in a case for the recovery of an estate on account of the breach of a condition subsequent in a deed, . . . the complaint must show, not only the breach, but also a forfeiture on account of the breach, effected by re-entry or demand, prior to the filing of the complaint"); Clark v. Holton, 57 Ind. 564, 567 (1877) ("[I]t is well settled, that, to enable the grantor or his heirs to recover back a tract of land, because of a forfeiture of a condition subsequent, an entry upon, or claim to, the land must be made before the commencement of the action.").  In this case, there is no evidence that the affected landowners, Michael and Rita Martin, or their predecessors ever reentered (or demanded possession of) the parcel conveyed by the side track deed, and then, if necessary, brought suit to recover a fee simple interest in the parcel from Indiana Southwestern or its predecessors.  Accordingly, when the Board issued the NITU, Indiana Southwestern held fee simple title to the parcel conveyed by the side track deed.  As a result, the issuance of the NITU could not have disturbed the Martins' property rights.  Defendant is therefore entitled to summary judgment with respect to the side track deed.

### C.  The Scope of the Easements

Having concluded that the Type A and Type A-1 deeds conveyed easements, the court proceeds to its next inquiry:  what is the scope of the easements conveyed by the Type A and

------

years from and after the date of such conveyance and transfer, which reversion shall automatically occur upon such failure of use as aforesaid[.]

988 N.E.2d at 252-53.

-17-

Type A-1 deeds and the scope of the easement acquired through prescription?  See Preseault, 100 F.3d at 1533.  More specifically, are the easements limited to use for railroad purposes, or are they broad enough to encompass use for recreational trails?  See id.

All thirteen of the deeds reflect that the conveyances were for the purposes of constructing, maintaining, and operating a railroad.  The Indiana Supreme Court has held that recreational trails are not within the scope of easements created for railroad purposes.  Howard v. United States, 964 N.E.2d 779, 784 (Ind. 2012).  Accordingly, those plaintiffs who own property adjacent to the easements conveyed by the Type A and Type A-1 deeds–Owen Halpeny; Jeffrey Memmer; Joseph Jenkins; Larry and Susan Goebel; McDonald Family Farms of Evansville, Inc.; Michael and Rita Martin; Gilbert Effinger; and James and Robin Schmidt–have cognizable Fifth Amendment property interests.[8]

With respect to the prescriptive easement obtained by Indiana Southwestern's predecessors, defendant does not dispute plaintiffs' contention that when a railroad company acquires a right-of-way through prescription, it obtains an easement for railroad purposes.  See Meyer v. Pittsburgh, Cincinnati, Chi. & St. Louis Ry. Co., 113 N.E. 443, 446 (Ind. App. 1916) ("It is also the general rule that where a railroad right of way is acquired by prescription, the company takes only an easement."); Hoffman, 97 N.E. at 1017 ("A prescriptive right, where there is no color of title, cannot be broader than the claims which the user evidences.  Ordinarily there is no user by a railroad company beyond a user for the purposes of a right of way."); accord Macy Elevator, Inc., 97 Fed. Cl. at 734-35 ("[U]nder Indiana law when a railroad acquires property by prescription or by condemnation, a railroad generally obtains an easement for railroad purposes.").  Accordingly, plaintiff Reibel Farms, Inc., which owns property adjacent to the easement acquired by prescription, has a cognizable Fifth Amendment property interest.[9]

### D.  The Effect of the NITU on Plaintiffs' Property Interests

As noted above, when the United States permits the interim use of a railroad line as a recreational trail, it may destroy a state-law property interest possessed by the adjacent landowners.  In Indiana, "easements may terminate and the property interest may revert to the underlying fee owner . . . when the easement holder changes the use in a way that goes far beyond the purpose for which the easement was created."  Macy Elevator, Inc. v. United States,

---

[8]  Defendant does not contest that the named plaintiffs' property extends to the centerline of the railroad right-of-way.  See also Macy Elevator, Inc., 97 Fed. Cl. at 719-20 (noting that it is well settled in Indiana that when deeds do not include the railroad right-of-way, the adjoining fee owners own to the centerline of the right-of-way, subject to the easement).

[9]  Defendant does not contest that Reibel Farms, Inc.'s property extends to the centerline of the railroad right-of-way.  See also Macy Elevator, Inc., 97 Fed. Cl. at 719-20 (noting that it is well settled in Indiana that when deeds do not include the railroad right-of-way, the adjoining fee owners own to the centerline of the right-of-way, subject to the easement).

105 Fed. Cl. 195, 199 (2012) (citation omitted); accord Ladd, 630 F.3d at 1019.  Such a change occurred in this case when the Board issued the NITU, terminating the railroad purposes easements and creating easements for recreational trail purposes.  See generally Macy Elevator, Inc., 105 Fed. Cl. at 199, 201-03.  The creation of the new easements prevented the plaintiffs with cognizable Fifth Amendment property interests from possessing their property unencumbered by the railroad purposes easements.  Accordingly, the NITU effected a Fifth Amendment taking.  And, as acknowledged by plaintiffs during oral argument, the taking is temporary, spanning from May 23, 2011, the effective date of the NITU, to November 8, 2013, the date the NITU expired.  See Oral Arg. Tr. 12:02:59-12:03:50, July 9, 2015.  The affected plaintiffs are therefore entitled to summary judgment on liability.

Defendant disagrees with the court's conclusion, arguing that under the specific facts of this case, the NITU did not result in a Fifth Amendment taking.  First, it contends that this case is distinguishable from most of the Trails Act cases that this court has considered because (1) a trail use agreement was not executed during the time period set forth in the NITU, as extended; (2) the NITU expired on its own terms on November 8, 2013; and (3) Indiana Southwestern was entitled to fully abandon its railroad lines upon the expiration of the NITU, but never took the required action to consummate the abandonment.  Based on these purportedly distinguishing facts, defendant asserts that the NITU could not have affected plaintiffs' state law property interests because any easements conveyed to Indiana Southwestern's predecessors remain in Indiana Southwestern's possession.  Defendant argues that, at best, the NITU caused a temporary taking, but that plaintiffs have not established that a temporary taking occurred.  Defendant's contentions run afoul of binding precedent.

In Ladd, the central issue before the United States Court of Appeals for the Federal Circuit ("Federal Circuit") was "whether the issuance of a NITU constitutes a compensable taking, where no conversion to a recreational trail has occurred."  630 F.3d at 1015.  The Federal Circuit held:

> Because according to our precedent, a takings claim accrues on the date that a NITU issues, events arising after that date–including entering into a trail use agreement and converting the railway to a recreational trail–cannot be necessary elements of the claim.  Hence it is irrelevant that no trail use agreement has been reached and that no recreational trail has been established.

Id. at 1024; accord Caquelin v. United States, No. 14-37L, 2015 WL 3799198, at *5-6 (Fed. Cl. June 17, 2015) (rejecting the government's argument that "the question of whether trail use exceeds the scope of the railroad's easement is 'irrelevant' under the circumstances presented because the NITU . . . expired on its own terms, and because no interim trail-use agreement was reached").  The court further explained that "where no trail use agreement is reached, the taking may be temporary," but noted that "[t]he duration of the taking goes to damages, not to whether a compensable taking has occurred."  Ladd, 630 F.3d at 1025; see also Barclay, 443 F.3d at 1378 ("This is merely another version of the argument–rejected in Caldwell–that the original NITU

-19-

should not be viewed as the taking because subsequent events might render the NITU only temporary."). The Federal Circuit's holdings are unambiguous: events arising after the Board issues the NITU have no effect on the existence of a Fifth Amendment taking, but may affect the nature of the taking to be compensated. Accordingly, Indiana Southwestern's failure to execute a trail use agreement and failure to consummate the abandonment of its railroad lines do not alter the conclusion that the issuance of the NITU effected a taking. Instead, those facts are relevant only to the amount of damages owed to plaintiffs for the taking.

Defendant's second argument against treating the NITU as the event that triggered a Fifth Amendment taking relates to the effect that an OFA has on a railroad company's request for an exemption from abandonment proceedings. Defendant asserts that because the OFA process takes precedence over a trail use request, the taking alleged by plaintiffs could not have accrued upon the issuance of the NITU. Rather, defendant contends, the taking did not accrue until the conclusion of the OFA process. Once again, however, the court declines to depart from controlling precedent, namely, the Federal Circuit's unambiguous holding in Ladd that a Fifth Amendment takings claim accrues on the date that the Board issues the NITU, regardless of what might occur afterward. See also Barclay, 443 F.3d at 1374 (noting that even the continued use of a railroad right-of-way for rail purposes after the issuance of the NITU does not change the fact that the NITU effected a taking). Post-NITU events may affect the duration of, and compensation for, the taking, but they do not foreclose the NITU from effecting the taking in the first instance.

## III.  CONCLUSION

As explained in more detail above, the court **GRANTS** plaintiffs' motion for partial summary judgment and **DENIES** defendant's cross-motion for partial summary judgment with respect to the parcels adjacent to the rights-of-way conveyed by the Type A and Type A-1 deeds and the parcel adjacent to the right-of-way created by prescription. In addition, the court **DENIES** plaintiffs' motion for partial summary judgment and **GRANTS** defendant's cross-motion for partial summary judgment with respect to the parcels adjacent to the rights-of-way conveyed by the Type B deeds and the side track deed. By **no later than Friday, July 24, 2015**, the parties shall file a joint status report suggesting further proceedings.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge